IN THE UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF ARKANSAS
LITTLE ROCK DIVISION

| | |
|---|---|
| IN RE: FREDDY MAY and<br>AMBER MAY, DEBTORS | CASE NO.: 4:17-bk-10970<br>CHAPTER 13 |
| FREDDY MAY and AMBER MAY | PLAINTIFFS |
| V. | AP NO.: 4:18-ap-01057 |
| MIDLAND FUNDING, LLC and<br>MIDLAND CREDIT MANAGEMENT, INC. | DEFENDANTS |

## MEMORANDUM OPINION AND ORDER
## CLASS ACTION

The debtors, Freddy and Amber May, filed a *Class Action Complaint* ("Complaint") on May 4, 2018. The defendants, Midland Funding, LLC and Midland Credit Management, Inc. ("Midland"), filed *Defendants' Motion to Compel Arbitration and to Strike Class Allegations and Memorandum in Support* ("Motion") on June 25, 2018, which drew *Plaintiffs' Memorandum in Opposition to Defendants' Motion to Compel Arbitration and Strike Class Allegations* ("Response") on July 25, 2018, each supplemented by sur-replies. Reserving all other matters, the court heard the Motion and Response solely as to the request for arbitration on August 30, 2018, and took the matter under advisement. In its *Memorandum Opinion and Order* ("Order"), entered on October 3, 2018, this court denied Midland's request for arbitration.

Thereafter, in its *Order Denying Motion to Dismiss*, entered on November 1, 2018, this court denied the *Defendants' Motion to Dismiss and Memorandum in Support* filed on June 25, 2018, at docket entries 7 and 9, and directed Midland to file an answer within twenty-one days. Midland filed *Defendants' Answer and Defenses to Plaintiffs' Class Action Adversary Complaint* ("Answer") on November 23, 2018.  Therein, Midland reasserted that "[p]laintiffs' claims are subject to the binding arbitration provision and class-action waiver included in the credit card

account agreement that governs the Account, which Midland is entitled to enforce by virtue of its purchase and assignment of the Account from Synchrony." (Answer, Nov. 23, 2018, ECF No. 51, at 9.)

Thus, left unresolved is the class action issue raised in Midland's original Motion and renewed in their Answer. Between the Motion and Answer, this court, on November 7, 2018, issued its *Order Setting Motion for Summary Judgment Deadlines* indicating that Midland's request to strike the class action allegations contained in the original Complaint would be treated as a request for summary judgment under Federal Rule of Bankruptcy Procedure 7056. Pursuant to that order, all parties filed supplements on November 5, 2018. Specifically, Midland supplemented their original Motion and Answer by filing *Defendants' Supplemental Letter Brief in Support of Motion to Strike Class Allegations* at docket 46; the debtors filed their letter response at docket 45. The debtors expanded their initial letter response by filing *Plaintiffs' Response to Motion to Strike Class Allegations* on December 3, 2018, at docket 55. Completing the pleadings, Midland filed *Defendants' Reply Brief in Support of Motion to Strike Class Allegations* on December 12, 2018, at docket 56. The court took this matter under advisement. For the reasons stated herein, Midland's request for summary judgment solely as to the issue of the enforceability of the agreed contractual class action waiver is granted.

## I. Jurisdiction

This court has jurisdiction over this matter under 28 U.S.C. §§ 1334 and 157. This is a related and core proceeding under 28 U.S.C. § 157(b)(2)(A), (B), (C), (O), and (c)(1). The following opinion and order constitute findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052.

## II. Background and Analysis

Freddy May opened a Lowe's credit card account financed through Synchrony Bank ("Synchrony") on May 5, 2013. According to the debtors, Synchrony received notice of their bankruptcy filing and then "transferred data about those debts to Midland under a written agreement." (Complaint, May 4, 2018, ECF No. 1, at ¶ 15.) Thereafter, Midland filed a proof of claim for an amount in excess of the scheduled debt. Despite representations that the proof of claim amount did not include interest or other charges, the debtors assert that Midland "knows that interest and fees are in the claim amount, [but] Midland direct[s] its employees to file Proofs of Claim that assert no interest or fees are in the claim amount." (Compl., at ¶ 25.) The debtors contend that this practice violates three provisions of Federal Rule of Bankruptcy Procedure 3001: (1) section (a) for "failing to file a Proof of Claim that conform[s] substantially to the Official Form because it failed to accurately disclose that interest, fees, expenses, or charges were included in the claim amount"; (2) section (c)(1) based on the alleged failure of Midland to adequately provide the written document underlying its claim;[1] and (3) section (c)(2) for failure "to file with its Proof of Claim an itemized statement of the interest, fees, expenses or charges that were incurred."[2] (Compl., at ¶¶ 29–30, 55–56.) Further, debtors assert that the aggregate of these alleged transgressions violate the Fair Debt Collection Practices Act, 15 U.S.C. § 1692.

The debtors seek relief primarily in the context of statutory damages and fees attendant to a class action. (Compl., at 11.) The bankruptcy specific prayer is in the nature of injunctive relief preventing inaccurate proofs of claim being filed in the future, requiring an amended proof of claim with supporting documentation in the instant case, and disallowing the claim if not properly amended. (Compl., at 12.)

---

[1] This section is mentioned in the body of the Complaint but not in Count II.

Contained in the debtors' Complaint is a request for class action certification. In its Order, the court denied Midland's effort to compel arbitration. That left outstanding the severable but somewhat intertwined issue of whether the class action waiver contained in the account agreement is enforceable. The debtors seek certification as a class action under Federal Rule of Civil Procedure 23.[3] Midland interposes waiver language that they argue is dispositive.

> Plaintiffs "**AGREE[D] NOT TO PARTICIPATE IN A CLASS, REPRESENTATIVE OR PRIVATE ATTORNEY GENERAL ACTION AGAINST US IN COURT OR ARBITRATION**," and that they also "**MAY NOT BRING CLAIMS AGAINST US ON BEHALF OF ANY ACCOUNTHOLDER WHO IS NOT AN ACCOUNTHOLDER ON YOUR ACCOUNT, AND YOU AGREE THAT ONLY ACCOUNTHOLDERS ON YOUR ACCOUNT MAY BE JOINED IN A SINGLE ARBITRATION WITH ANY CLAIM YOU HAVE.**"

(Motion to Compel Arb., June 25, 2018, ECF No. 8, at 13.)

Contextually, this waiver language is included in the full arbitration section.[4] This section

---

[2] This section is mentioned in Count II but not in the body of the Complaint.

[3] As incorporated by Federal Rule of Bankruptcy Procedure 7023.

[4] **RESOLVING A DISPUTE WITH ARBITRATION.**
**PLEASE READ THIS SECTION CAREFULLY. IF YOU DO NOT REJECT IT, THIS SECTION WILL APPLY TO YOUR ACCOUNT, AND MOST DISPUTES BETWEEN YOU AND US WILL BE SUBJECT TO INDIVIDUAL ARBITRATION. THIS MEANS THAT: (1) NEITHER A COURT NOR A JURY WILL RESOLVE ANY SUCH DISPUTE; (2) YOU WILL NOT BE ABLE TO PARTICIPATE IN A CLASS ACTION OR SIMILAR PROCEEDING; (3) LESS INFORMATION WILL BE AVAILABLE; AND (4) APPEAL RIGHTS WILL BE LIMITED.**

- **What claims are subject to arbitration** . . . .
  3. Notwithstanding any other language in this section, only a court, not an arbitrator, will decide disputes about the validity, enforceability, coverage or scope of this section or any part thereof (including, without limitation, the next paragraph of this section and/or this sentence). However, any dispute or argument that concerns the validity or enforceability of the Agreement as a whole is for the arbitrator, not a court, to decide.

- **No Class Actions**
  YOU AGREE NOT TO PARTICIPATE IN A CLASS,

4

of the contract is clear. It contains: a contractual waiver of the right to seek or enjoy class action status in arbitration or court; the debtors/account holders have the right to opt out; the arbitration clause *in its entirety,* including the waiver clause, is governed by the Federal Arbitration Act ("FAA"); only a court "will decide disputes about the validity, enforceability, coverage or scope of this section or any part thereof"; and Utah law is applicable "to the extent state law is relevant under the FAA." (Lowe's Agreement, at 4–5.)

> **REPRESENTATIVE OR PRIVATE ATTORNEY GENERAL ACTION AGAINST US IN COURT OR ARBITRATION. ALSO, YOU MAY NOT BRING CLAIMS AGAINST US ON BEHALF OF ANY ACCOUNTHOLDER WHO IS NOT AN ACCOUNTHOLDER ON YOUR ACCOUNT, AND YOU AGREE THAT ONLY ACCOUNTHOLDERS ON YOUR ACCOUNT MAY BE JOINED IN A SINGLE ARBITRATION WITH ANY CLAIM YOU HAVE.**
>
> If a court determines that this paragraph is not fully enforceable, only this sentence will remain in force and the remainder will be null and void, and the court's determination shall be subject to appeal. This paragraph does not apply to any lawsuit or administrative proceeding filed against us by a state or federal government agency even when such agency is seeking relief on behalf of a class of borrowers, including you. This means that we will not have the right to compel arbitration of any claim brought by such an agency.
>
> . . . .
>
> - **Governing Law for Arbitration**
>   This Arbitration section of your Agreement is governed by the Federal Arbitration Act (FAA). Utah law shall apply to the extent state law is relevant under the FAA. The arbitrator's decision will be final and binding, except for any appeal right under the FAA. Any court with jurisdiction may enter judgment upon the arbitrator's award.
>
> - **How to reject this section**
>   **You *may* reject this Arbitration section of your Agreement. If you do that, only a court may be used to resolve *any* dispute or claim. To reject this section, *you* must send us a notice within 60 days after *you* open *your* account or we first provided you with your right to reject this section. The notice must include your name, address and account number, and must be mailed to GE Capital Retail Bank, P.O. Box 965012, Orlando, FL 32896-5012. This is the only *way* you can reject this section.**

(Lowe's Credit Card Account Agreement, June 25, 2018, ECF No. 8-1, at 4–5) (emphasis added).

5

The debtors chose not to opt out and do not contest Midland's assertion that Utah law permits clauses of this nature, as follows:

> § 70C–4–105. Class actions
> (1) In accordance with this section, a creditor *may* contract with the debtor of an open-end consumer credit contract for a waiver by the debtor of the right to initiate or participate in a class action related to the open-end consumer credit contract.
> (2) To contract for the waiver described in Subsection (1), the creditor shall disclose the waiver: (a) to the debtor; (b) in the open-end consumer credit contract; and (c) for an open-end consumer credit contract entered into on or after August 1, 2006, in: (i) bold type; or (ii) all capital letters.

UTAH CODE ANN. § 70C–4–105 (West 2018) (emphasis added). The debtors now seek to be excused from their contract and from their failure to opt out.

Were the inquiry to end here, it might be simple. Utah law permits class action waivers, and the parties contracted accordingly. However, we are in federal court with a class action prayer that drew a request to compel arbitration and enforce a class action waiver directly in the shadow of the FAA. Accordingly, Midland and the debtors principally cited cases dealing with arbitration clauses that included class action waivers. Yet, in this instance, the court has already denied Midland's request for arbitration.[5] (Memorandum Opinion and Order, Oct. 3, 2018, ECF No. 33.) The cases cited by the parties, however, retain their efficacy both in the context of a class action waiver conjoined with an arbitration clause and a waiver contractually separated by a severability clause. Further complicating—or perhaps simplifying—matters, the class action waiver, even if severed, is contractually still governed by the FAA. Fortunately, the inquiry and

---

[5] The waiver enforceability analysis is independent of and not subsumed in the "inherent conflict" analysis set forth in the court's Order rejecting the arbitration provision as contrary to an underlying purpose of the Bankruptcy Code. Two independent and complimentary bases suggest that this analysis can proceed. First, the "inherent conflict" analysis set forth in *McMahon* and observed in the Order appears to apply to the entirety of the appropriate *forum* determination rather than any procedural specifics in either. *Shearson/American Exp., Inc. v. McMahon*, 482 U.S. 220, 227 (1987). Second, the agreement contains a severability clause in the event the court does not compel arbitration.

6

analysis along all trails independently and collectively compel the same result.

The debtors contend that the class action waiver is unenforceable.

> While arbitration agreements have been subject to recently-developed federal "pro-arbitration policy," no such policy exists for class waivers. The U.S. Supreme Court has held that a state rule was unenforceable when it conflicted with a valid federal procedural rule (Federal Rule of Civil Procedure 23). *See Shady Grove Orthopedic Associates, P.A. v. Allstate Insurance Company*, 59 U.S. 393, 130 S. Ct. 1431 (2010). Under a similar analysis, federal district courts have refused to enforce contractual bars to class actions, holding that whether a private contractual agreement binds or constrains a federal court's procedures is a question of federal law. *See Martrano v. Quizno's Franchise Co., L.L.C.,* Civ. No. 08-0932, 2009 WL 1704469 (W.D. Pa. June 15, 2009). The standards of Rule 23 do "not call for consideration of the parties's preferences." *Id*. When this issue is procedurally before this Court, it should be denied.

(Debtors' Letter Br., Nov. 5, 2018, ECF No. 45, at 2.)

The enforceability of a class action waiver intertwined with or severed from an arbitration clause is not without precedent, and any analysis of the former partially informs the latter. The Eighth Circuit Court of Appeals considered the former in *Torres v. Simpatico, Inc.* 781 F.3d 963 (8th Cir. 2015). The appellants in *Torres* were franchisees who entered into agreements that contained arbitration clauses restricting complainants to arbitration on an "individual, not a class-wide, basis." *Torres v. Simpatico, Inc.,* 995 F. Supp. 2d 1057, 1062 (E.D. Mo. 2014), *aff'd*, 781 F.3d 963 (8th Cir. 2015). The lower court enforced the arbitration provision. *Id*. at 1065. In affirming, the Eighth Circuit noted:

> Because "arbitration is a matter of contract," whether an arbitration provision is valid is a matter of state contract law, and an arbitration provision may be "invalidated by 'generally applicable contract defenses, such as fraud, duress, or unconscionability,' but not by defenses that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue." If a valid and enforceable arbitration agreement exists under state-law contract principles, any dispute that falls within the scope of that agreement must be submitted to arbitration. We ask only whether the arbitration agreement is valid and whether the dispute falls within the terms of that agreement.

*Torres,* 781 F.3d at 968 (internal citations omitted). Congruently,

7

> Under [state] law . . . "arbitration agreements are tested through a lens of ordinary state-law principles that govern contracts, and consideration is given to whether the arbitration agreement is improper in light of generally applicable contract defenses . . . such as fraud, duress, or unconscionability." But "no state-law rule that is 'an obstacle to the accomplishment of the FAA's objectives' should be applied to invalidate an arbitration agreement."

*Id*. (internal citations omitted).

The debtors have not raised or interposed law or supporting facts suggesting the applicability of any general contractual defenses to the class action waiver under Utah law, including that the formation or execution of the account agreement was unconscionable. The entirety of the debtors' causes of action relate to an alleged improperly filed proof of claim, not any infirmity or defense related to the account agreement's formation or performance thereunder. Further, no state law or rule exists that attempts to adversely impact or impede the FAA. Here, the Utah statute does the opposite, permissively validating such waiver clauses if agreed to by the parties. The debtors simply declined their affirmative right to opt out.

The U.S. Supreme Court recently considered and upheld a contractual class action waiver in light of seemingly contradictory federal legislation. The Court in *Epic Systems Corp. v. Lewis* led with the issue:

> Should employees and employers be allowed to agree that any disputes between them will be resolved through one-on-one arbitration? Or should employees always be permitted to bring their claims in class or collective actions, no matter what they agreed with their employers?

138 S. Ct. 1612, 1619 (2018). And immediately answered:

> As a matter of policy these questions are surely debatable. But as a matter of law the answer is clear. In the Federal Arbitration Act, Congress has instructed federal courts to enforce arbitration agreements according to their terms—including terms providing for individualized proceedings.

*Id.*

In *Epic*, one example summarized three cases. Morris sued his employer, Ernst & Young,

8

in federal court. Despite their agreement providing for "individualized proceedings," Morris sought class action certification under Federal Rule of Civil Procedure 23. *Id.* at 1620. "Ernst & Young replied with a motion to compel arbitration," which the district court granted; the Ninth Circuit reversed, reasoning "that an agreement requiring individualized arbitration proceedings violates the NLRA by barring employees from engaging in the 'concerted activity,' of pursuing claims as a class or collective action." *Id*. (internal citations omitted). The Supreme Court reversed, stating:

> Not only did Congress require courts to respect and enforce agreements to arbitrate; it also specifically directed them to respect and enforce the parties' chosen arbitration procedures. *See* § 3 (providing for a stay of litigation pending arbitration "in accordance with the terms of the agreement"); § 4 (providing for "an order directing that . . . arbitration proceed in the manner provided for in such agreement"). Indeed, we have often observed that the Arbitration Act requires courts "rigorously" to "enforce arbitration agreements according to their terms, including terms that specify *with whom* the parties choose to arbitrate their disputes and *the rules* under which that arbitration will be conducted."
>
> On first blush, these emphatic directions would seem to resolve any argument under the Arbitration Act. The parties before us contracted for arbitration. They proceeded to specify the rules that would govern their arbitrations, indicating their intention to use individualized rather than class or collective action procedures. And this much the Arbitration Act seems to protect pretty absolutely. You might wonder if the balance Congress struck in 1925 between arbitration and litigation should be revisited in light of more contemporary developments. You might even ask if the Act was good policy when enacted. But all the same you might find it difficult to see how to avoid the statute's application.

*Id.* at 1621–22 (internal citations omitted).

Additionally, the Court in *Epic* drew little distinction between forums when it comes to the parties agreed procedures.

> The NLRA secures to employees rights to organize unions and bargain collectively, but it says nothing about how *judges and arbitrators* must try legal disputes that leave the workplace and enter the *courtroom or arbitral forum*. This Court has never read a right to class actions into the NLRA—and for three quarters of a century neither did the National Labor Relations Board. Far from conflicting, the Arbitration Act and the NLRA have long enjoyed separate spheres of influence

9

and neither permits this Court to declare the parties' agreements unlawful.

*Id*. at 1619 (emphasis added).

Further, in rejecting the dissent's policy argument, the Court deferentially noted a statute recognizing the right to contractually restrict class actions.

> Ultimately, the dissent retreats to policy arguments. It argues that we should read a class and collective action right into the NLRA to promote the enforcement of wage and hour laws. But it's altogether unclear why the dissent expects to find such a right in the NLRA rather than in statutes like the FLSA that actually regulate wages and hours. Or why we should read the NLRA as mandating the availability of class or collective actions when the FLSA expressly authorizes them yet allows parties to contract for bilateral arbitration instead. While the dissent is no doubt right that class actions can enhance enforcement by "spread[ing] the costs of litigation," it's also well known that they can unfairly "plac[e] pressure on the defendant to settle even unmeritorious claims." *Shady Grove Orthopedic Associates, P.A. v. Allstate Ins. Co.,* 559 U.S. 393, 445 n. 3 (2010) (Ginsburg, J., dissenting). The respective merits of class actions and private arbitration as means of enforcing the law are questions constitutionally entrusted not to the courts to decide but to the policymakers in the political branches where those questions remain hotly contested. Just recently, for example, one federal agency banned individualized arbitration agreements it blamed for underenforcement of certain laws, only to see Congress respond by immediately repealing that rule. This Court is not free to substitute its preferred economic policies for those chosen by the people's representatives. *That,* we had always understood, was *Lochner*'s sin.

*Id.* at 1632 (some internal citations omitted).

Also,

> Consider a few examples. In *Italian Colors,* this Court refused to find a conflict between the Arbitration Act and the Sherman Act because the Sherman Act (just like the NLRA) made "no mention of class actions" and was adopted before Rule 23 introduced its exception to the "usual rule" of "individual" dispute resolution. In *Gilmer,* this Court "had no qualms in enforcing a class waiver in an arbitration agreement even though" the Age Discrimination in Employment Act "expressly permitted collective legal actions." And in *CompuCredit,* this Court refused to find a conflict even though the Credit Repair Organizations Act expressly provided a "right to sue," "repeatedly" used the words "action" and "court" and "class action," and even declared "any waiver" of the rights it provided to be "void." If all the statutes in all those cases did not provide a congressional command sufficient to displace the Arbitration Act, we cannot imagine how we might hold that the NLRA alone and for the first time does so today.

*Id.* at 1627–28 (internal citations and brackets omitted).

*Newberg on Class Actions* provides a historical and contextual analysis of *Epic* in light of previous Supreme Court decisions.

> Following these six decisions, defendants cannot be compelled to submit to class arbitration proceedings without some evidence of their intent to do so, and contracts waiving class proceedings are now more likely to be enforced. These two results, in combination, make it more likely that defendants will incorporate in their contracts, and that courts will subsequently uphold, class action waivers, and that these waivers will preclude both judicial and arbitral class actions.

2 WILLIAM B. RUBENSTEIN, NEWBERG ON CLASS ACTIONS § 6:63 (5th ed. 2018).[6]

The Eighth Circuit's *Torres* opinion and the line of Supreme Court cases culminating in *Epic* reflect that the appropriate result is enforcing the class action waiver that is clearly set forth in the parties' agreement. As stated in *Epic*, "[t]he respective merits of class actions and private arbitration as means of enforcing the law are questions constitutionally entrusted not to the courts to decide but to the policymakers in the political branches where those questions remain hotly contested." 138 S. Ct. at 1632.

The debtors advance the Supreme Court's decision in *Shady Grove* in support of disregarding their waiver. That decision, however, dealt with a conflict between Rule 23 and a specific New York state rule that restricted class actions in specifically enumerated circumstances. The majority concluded that Rule 23 superseded the New York rule because both dealt with the same issue, the ability to maintain a class action, and that the federal rule was proper under the Rules Enabling Act. *Shady Grove*, 559 U.S. 393. Here, no such conflicting or intrusive state rule exists. The Utah statute is permissive and merely sanctions a waiver if the parties contractually

---

[6] The six decisions are as follows, in chronological order: (1) *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.,* 559 U.S. 662 (2010); (2) *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333 (2011); (3) *Oxford Health Plans LLC v. Sutter*, 569 U.S. 564 (2013); (4) *American Exp. Co. v. Italian Colors Restaurant,* 570 U.S. 228 (2013); (5) *DIRECTV, Inc. v. Imburgia*, 136 S. Ct. 463

agree. Congruently, Justice Scalia, who wrote for the majority in *Shady Grove*, upheld an arbitration clause containing a "contractual waiver of class arbitration" in *American Express Co. v. Italian Colors Restaurant*. 570 U.S. 228, 238–39 (2013).

The debtors also argue *Martrano v. Quiznos Franchise Co., LLC,* where the court in 2009 considered and disregarded cases that dealt with class action waivers solely in the context of arbitration clauses. *Martrano*, 2009 WL 1704469. The *Martrano* court concluded that it was entitled to apply Rule 23 on the basis that the procedural rule, appropriate under the Rules Enabling Act, would apply as "federal courts sitting in diversity apply state substantive law and federal procedural law." *Id.* at *20 (*quoting Liberty Mut. Ins. Co. v. Treesdale, Inc.,* 419 F.3d 216 (3d Cir. 2005)). Further, in considering the express prerequisites contained in each specific federal rule, the court noted:

> These controlling standards make no mention of whether a class action is preferred by the parties. Likewise, as long as actions involve a common question of law or fact, Rule 42(a) contemplates issuance of consolidation orders "to avoid unnecessary cost or delay" –a standard that also does not call for consideration of the parties' preferences. Under both Rule 23 and Rule 42, the ultimate governing standard is furtherance of efficient judicial administration, which leaves no room for enforceability of private agreements among litigants to forego the efficiencies potentially afforded by consolidated or class adjudication.

*Id.* at *21.

With respect for a well-reasoned opinion, the fact that the prerequisite language in both Rules 23 and 42 specifically "make[s] no mention of whether a class action is preferred by the parties" should not be given dispositive effect. *Martrano,* 2009 WL 1704469 at *21. The parties' preferences are seldom contemplated in most rules or statues. Further, this court absolutely concurs that Rule 23 governs procedural matters before this court. That conclusion, however, does not resolve whether a class action can be appropriately waived by the parties. The line of cases

---

(2015); (6) *Epic Systems Corp. v. Lewis*, 138 S. Ct. 1612 (2018).

culminating in *Epic* suggests it can, independently or when intertwined with an arbitration clause. *Shady Grove* is distinguishable as involving a state statute that prohibited class action waivers in specified instances whether or not the parties, particularly the defendant, had agreed or contracted otherwise. 559 U.S. 393 (2010). The New York statute under consideration in *Shady Grove* told federal courts they could not use Rule 23, a procedural rule, in their court while applying New York substantive law. *Id.* Here, no such obstacle or intrusion exists. Unquestionably, this court can use Rule 23. Equally and dispositively, this court must respect the parties' valid and voluntary agreement to waive class actions, which is a result fully consonant with the line of cases including *Shady Grove* and culminating in *Epic*.

### III. Conclusion

Midland's request for summary judgment is granted as to the debtors' prayer for class action certification and relief. A separate judgment will be entered to that effect.

IT IS SO ORDERED.

Dated this 29th day of January, 2019.

_____
HONORABLE RICHARD D. TAYLOR
UNITED STATES BANKRUPTCY JUDGE

cc: William Thomas Crowder
    Thomas J. Diaz
    John Michael Rainwater
    Jason B. Tompkins
    Geoffrey B. Treece
    Mary Tipton-Thalheimer
    Mark T. McCarty